IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSE NUNEZ,

    Petitioner,

v.

BRADLEY J. ROBERT,

    Respondent.                                            No. 04-CV-121-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

### I. INTRODUCTION

On February 24, 2004, petitioner Jose Nunez filed this Petition for a Writ of Habeas Corpus, pursuant to **28 U.S.C. § 2254**, with this Court. (Doc. 1.) On June 10, 2005, Respondent filed a motion to dismiss. (Doc. 9.) In consideration of Respondent's motion to dismiss, Magistrate Judge Donald G. Wilkerson issued a Report and Recommendation (the "Report"). (Doc. 12.)

The Report first recommends that the Court substitute Bradley J. Robert for respondent Edwin J. Bowen, as Robert is currently the warden of Centralia Correctional Center, where Nunez is assigned, and such substitution is proper pursuant to Rule 2(a) of the Rules Governing § 2254 cases. Further, the Report recommends granting Respondent's motion to dismiss and thereby dismissing Nunez's Petition. The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" within ten days

of service. Nunez filed timely objections to the Report, which necessitates a *de novo* review be conducted by this Court. For the following reasons, the Court affirms the Report.

## II. BACKGROUND

### A. FACTUAL HISTORY

To briefly recount the facts relevant for this review, Nunez was convicted on September 29, 1993, by a jury in St. Clair County Circuit Court, of controlled substance trafficking and sentenced to 34 years imprisonment and a $1,575,000 fine was also imposed. (Doc. 1, pp. 4-5; *see also* Doc. 9, Ex. C, p. 1.) Nunez proceeded to appeal his conviction to the Illinois Appellate Court, Fifth District, which affirmed his conviction in an order dated May 3, 1996. (Doc. 9, Ex. A.) Nunez thereafter made no further attempt to appeal the Fifth District's decision to the Illinois Supreme Court. (Doc. 1, p. 5, ¶ 10c.) However, Nunez states that the reason he did not file an appeal with the Illinois Supreme Court is because he filed a post-conviction petition with the St. Clair County Circuit Court, claiming that his trial counsel was ineffective, the trial court erred in denying a motion to suppress and challenging whether the Appellate Court's decision affirming his conviction was *res judicata*. (Doc. 1, p. 5-6, ¶¶ 10d and 11A4.)

The St. Clair County Circuit Court denied Nunez's post-conviction petition in an order dated November 20, 2000. (Doc. 1, p. 6-7, ¶¶ 11A6 and 11A7; *see also* Doc. 9, Ex. B.) Again, Nunez appealed the denial of his post-conviction petition to the Illinois Appellate Court, Fifth District, which was also affirmed in an

order dated October 3, 2002. (Doc. 9, Ex. C.) Therefore, Nunez appealed the Fifth District's decision to the Illinois Supreme Court, which also subsequently affirmed the denial of his post-conviction petition in an order dated February 5, 2003. ***People v. Nunez,* 787 N.E.2d 178 (table)(Ill. 2003)** (*see also* Doc. 9, Ex. D - Case No. 95145.)

**B.    PROCEDURAL HISTORY**

Nunez filed his Petition on February 11, 2005. (Doc. 11, § 3.) Specifically, Nunez raises the following issues: (1) his Fourth Amendment rights were violated; (2) ineffective assistance of trial counsel and (3) whether the appellate court's ruling on his conviction appeal should be considered *res judicata*. (Doc. 1, pp. 9-10.) The Respondent's Motion to Dismiss asserts that Nunez's habeas Petition should be dismissed because he failed to comply with the limitations period set forth in **28 U.S.C. § 2244(d)(1)**. (Doc. 9, ¶¶ 11, 12.)

In particular, Respondent argues that Nunez's Petition should be dismissed with prejudice because it was filed more than one year after "the date on which the judgment became final by the conclusion of direct review . . . ." as stated in **28 U.S.C. § 2244(d)(1)(A)**. (Doc. 9, ¶¶ 11, 12.) In this case, Respondent asserts that the judgment "became final" on February 5, 2003, when the Illinois Supreme Court denied Nunez's post-conviction appeal. (*Id.*) If true, Nunez then had until February 5, 2004, to file his Petition. However, Respondent asserts that the earliest

date Nunez's Petition can be considered filed is February 11, 2004.[1]  (*Id.*)

Nunez filed an opposing response to Respondent's motion to dismiss, objecting to the assertion that his Petition is time barred under **28 U.S.C. § 2244(d)**.  (Doc. 11.)  Essentially, Nunez reasons that the principles of equitable tolling should apply in this case because he was provided incorrect advice regarding the filing date by a civilian paralegal and an inmate law clerk.  (*Id.* at ¶¶ 2, 3.)  Nunez alleges that when he went to the law library at the Centralia Correctional Center, he was specifically told by both the assigned inmate law clerk and civilian paralegal that he had to file his Petition within one year from the date the mandate was issued by the Illinois Supreme Court with respect to the denial of his post-conviction appeal; that date of issue being February 27, 2003.  (*Id.* at ¶ 3.)  Therefore, following their advice (albeit bad advice) as to this time frame, his Petition actually *was* timely, as it ostensibly was not due until February 27, 2004.  Nunez claims that as he is not trained in the law, he had no other choice but than to rely on the assistance provided by the law clerk and paralegal regarding the time limit for filing his Petition; his delay was not deliberately intended.  (*Id.* at ¶ 4.)

Nunez also filed objections to the Report.  (Doc. 13.)  His arguments mirror those contained in his opposing response to Respondent's motion to dismiss, with the exception that the name of Respondent should be changed to J. Mark Jones,

---

[1] Although the Petition itself indicates it was received by this Court on February 24, 2004, the Petition and Certificate of Service are signed by Nunez and dated February 11, 2004.  Therefore, Respondent (and this Court) give Nunez the benefit of the mailbox rule and assume the Petition was mailed on that date as well, for purposes of a filing date.

as he is the new Warden of the Jacksonville Correctional Center, where Nunez is currently assigned. (*Id*. at ¶ 2.) Adhering to his equitable tolling defense, Nunez request that this Court deny Respondent's motion to dismiss, so that his Petition may be heard on the merits.

### III. ANALYSIS

**A. LEGAL STANDARD**

    **1.** *De Novo* **Review**

Because Nunez filed timely objections to the Report,[2] this Court must undertake *de novo* review of the objected-to portions of the Report. **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); Southern District of Illinois Local Rule 73.1(b);** ***Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992)**. The Court may "accept, reject, or modify the recommended decision." ***Willis v. Caterpillar Inc.*, 199 F.3d 902, 904 (7th Cir. 1999)**. In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made. *Id*.

    **2. Limitations Period for Filing Habeas Petitions**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "Act") governs a habeas petition filed pursuant to **28 U.S.C. § 2254** if filed after the Act's

---

[2] The Report was issued on October 24, 2005. Therefore, Nunez was to file objections to the Report on or before November 10, 2005. The file stamp on his objections show they were received by the clerk of this Court on November 14, 2005. However, the certificate of shows the objections were placed in the prison mail system on November 9, 2005. Therefore, as he is a *pro se* petitioner, under the mailbox rule, his objections are considered timely filed for purposes of this Court's review.

effective date on April 24, 1996. ***Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Gosier v. Welborn*, 175 F.3d 504, 506 (7th Cir. 1999)**. The relevant section of the Act which governs the time period for filing a habeas petition is **28 U.S.C. § 2244(d)**.

> **28 U.S.C. § 2244(d)** states (with emphasis added):
>
> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>     (A) **the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review**;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**B.    WHETHER A DISMISSAL IS WARRANTED**

First, the Court must determine whether Nunez's Petition is, in fact,

time barred under **28 U.S.C. § 2244(d)**. If so, the Court must next consider whether the principles of equitable tolling apply in this instance, in order to allow the Petition to be considered on the merits, even if not timely filed.

The Seventh Circuit has previously found that "[s]tate law controls the issue of when a state action is pending and when it is final." ***Gildon v. Bowen*, 384 F.3d 883, 887 (7th Cir. 2004)(citing *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002))**. ***Gildon*** made note of the fact that the Seventh Circuit had also previously found that "the judgment of an Illinois Court of Appeals is final on the day it is entered." ***Id.* (citing *Wilson*, 302 F.3d at747 (internal citation omitted))**. As such, the Seventh Circuit holds that a state post-conviction proceeding is considered "final" the date on which the judgment is entered – and not the date the mandate is issued. ***Id.*** Following ***Gildon's*** precedent, the Court can affirmatively state that the date from which the one-year limitation period applies in this case would be February 5, 2003 – the date on which the judgment was entered by the Illinois Supreme Court – and *not* February 27, 2003 – the date on which the mandate was issued. Therefore, Nunez should have filed his Petition no later than February 5, 2004. As he did not file it until February 11, 2004, it is time barred under the 1-year limitations period of **§ 2244(d)**.

Determining that technically, Nunez's Petition is time-barred under **28 U.S.C. § 2244(d)**, the Court must next examine the issue of whether equitable tolling applies. Habeas petitions filed pursuant to Nunez must demonstrate two elements

to warrant equitable tolling: (1) diligent pursual of his rights, and (2) extraordinary circumstance(s) which caused his untimely filing of his Petition. ***Pace v. DiGuglielmo*, \_\_ U.S. \_\_, 125 S. Ct. 1807, 1814 (2005)**. Additionally, the "extraordinary circumstances" must be "outside of the petitioner's control . . . ." ***Gildon*, 384 F.3d at 887; *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004)(stating that equitable tolling is "such exceptional relief . . . ." (internal citation omitted))**.

In both his opposition to Respondent's motion to dismiss and objections to the Report, Nunez claims he has always filed his actions "in a timely manner . . . ." (Doc. 11, ¶ 6; Doc. 13, ¶ 5.) Reviewing the record, it appears as though Nunez has previously been diligent in pursuing his remedies in a timely fashion. Therefore, the Court finds that Nunez has met the first prong of the equitable tolling analysis in that he has diligently pursued his rights in past endeavors.

However, the Court must also examine whether there were any "extraordinary circumstances" outside of Nunez's control, which caused his delay in filing the Petition in order to warrant equitable tolling of the 1-year limitations period. Nunez offers two congruous explanations: (1) he is not trained in the law and "what little knowledge he has gained over the years, has resulted in some confusion for him (Doc. 11, ¶ 4; Doc. 13, ¶ 4); and (2) because of his lack of legal knowledge, he had to rely on the assistance of others – particularly of a civilian paralegal and inmate law clerk assigned to the correctional center law library where Nunez was

assigned (*Id.*). Specifically, Nunez asserts that he was advised by both the civilian paralegal and the inmate law clerk (both are unnamed in Nunez's pleadings) that the 1-year limitations period began to run from the date on which the mandate was entered by the Illinois Supreme Court, February **27**, 2003, rather than the correct calculation date, the date on which the judgment became final on February **5**, 2003. (Doc. 11, ¶¶ 1-3; Doc. 13. ¶¶ 6, 8[3].)

Acknowledging that the 1-year limitations period of **§ 2244(d)** begins to run from the date judgment was entered and *not* the date of the mandate, Nunez argues that he detrimentally relied on the incorrect advice provided by the civilian paralegal and inmate law clerk or would not have otherwise filed his Petition late. (*Id.*) In fact, he notes, the Petition was untimely filed only by a few days, and considering he was using February 27, 2003 as his 1-year starting point, his Petition was actually filed *early* (ideally). (Doc. 11, ¶¶ 8, 10.) To conclude, Nunez asserts that had he known the advice he received was incorrect, had he been able to adequately understand the relevant law, and/or had he had the access to a practicing attorney, he would not have filed his Petition past the 1-year limitations period. (Doc. 11, ¶ 6, Doc. 13, ¶ 9.)

Although the Court sympathizes with Nunez's predicament, the law does not support a finding of equitable tolling in this instance. Very rarely will an

---

[3] This is actually paragraph number 7, but Nunez inadvertently misnumbered the paragraphs of his objections to the Report, omitting paragraph number 7 – labeling it paragraph "8" instead.

untimely-filed habeas petition be found to toll the statute of limitations. **Williams v. Sims, 390 F.3d 958, 963 (7th Cir. 2004)("It should be obvious that an untimely petition would not toll a statute of limitations; and while that might not be obvious to an unrepresented prisoner, even reasonable mistakes of law are not a basis for equitable tolling.  This is the general rule . . . and it has been applied repeatedly to pro se habeas corpus petitioners.")(internal citations omitted)**.

The Seventh Circuit does not recognize grounds for equitable tolling based upon the negligence of an attorney. **See Modrowski v. Mote, 322 F.3d 965, 967-68 (7th Cir. 2003)**. Nor does the United States Supreme Court find that states should be required to provide legal assistants and law clerks to prisoners to ensure meaningful access to courts. **See Lewis v. Casey, 518 U.S. 343, 351 (1996)**. As such, even for *pro se* prisoner litigants, the Court must continue to adhere to the foundational maxim that "ignorance of the law is no excuse," as oftentimes, prisoner litigants are required to take these matters into their own hands. **See Modrowski, 322 F.3d at 968 ("We will not revisit our long-standing determination that petitioners bear ultimate responsibility for their filings . . . .")(citing Johnson v. McCaughtry, 265 F.3d 559, 566 (7th Cir. 2001))**. Although somewhat obdurate, this view is necessary, "[o]therwise statutes of limitations would have little bite, and no value at all to persons or institutions sued by people who don't have good, or perhaps any, lawyers" or other legal assistance. **Williams, 390 F.3d at**

**963**.

As discussed above, the fact that Nunez may not have adequate knowledge of the law applicable to the limitations period in this instance is not sufficient to be deemed as an extraordinary circumstance beyond his control in order to warrant tolling. Further, the Court does not find that the incorrect advice provided by the civilian paralegal and inmate law clerk amounts to an extraordinary circumstance beyond Nunez's control in order to warrant tolling. Two cases with parallel facts to the instant case support this finding.

In **Marsh v. Soares**, the habeas petitioner filed his habeas petition after the 1-year limitations period.[4] **223 F.3d 1217, 1218 (10th Cir. 2000)**. In an attempt to avoid this limitations period, the petitioner offered equitable tolling arguments. **Id. at 1220**. First, the petitioner pleaded "'his ignorance of the law completely rob[bed] him of any opportunity to fend for himself . . . and that his failure to timely file should therefore be viewed as 'excusable neglect.'" **Id. (citing petitioner's brief)**. Second, the petitioner claimed that he relied on the assistance of an inmate law clerk, which ultimately led to his untimely filing of the habeas petition. **Id.** Similar to this matter, the Tenth Circuit found that although the petitioner had previously pursued his claims with diligence, he did not show any extraordinary circumstances for his failure to comply with the 1-year limitations

---

[4] Also similar to the instant case, in **Marsh**, the Tenth Circuit decided to consider the date of filing according to the date it was signed by petitioner, and not the date the petition was actually filed stamped by the court. The **Marsh** court noted this was allowed under a "[l]iberal application of the mailbox rule . . . ." **Marsh**, **223 F.3d at 1218 n.1**.

period. *Id.* The Tenth Circuit held that ignorance of the law would not excuse an untimely filing, even if the petitioner is incarcerated and filing *pro se*. *Id.* Further, the Tenth Circuit held that the petitioner would not be relieved of his personal responsibility of complying with the law, regardless of the fact he relied upon assistance and advice of an inmate law clerk. *Id.* Therefore, the *Marsh* court did not find grounds to warrant equitable tolling.

The second case bears mentioning due to the similarity of circumstance. In **Robertson v. Briley**, a habeas petitioner also filed past the 1-year limitations period, but claimed that his detrimental reliance on the faulty advice of an inmate law clerk warranted equitable tolling. **Case No. 04-C-6339, 2005 WL 226609 at *1 (N.D. Ill. Sept. 15, 2005)**. The *Robertson* court did not find the petitioner's reliance on the faulty advice of an inmate law clerk rose to the level of an "extraordinary circumstance" which would prevent the petitioner from filing a timely petition. *Id.* at *3*. Instead, the district court reasoned that "[m]any inmates in petitioner's position face the same barriers," and therefore refused to find exception. *Id.*

Based upon precedent and also non-binding, but factually similar cases, the Court in this instance also finds that Nunez's reliance on the incorrect advice provided by the civilian paralegal and inmate law clerk is not an "extraordinary circumstance" to warrant equitable tolling of the 1-year limitations period under **§2244(d)**. Upon this *de novo* review, the Court finds that Nunez's petition was

untimely filed and therefore Respondent's motion to dismiss should be **GRANTED**.

### III.  CONCLUSION

For the reasons stated herein, the Court, upon conducting a *de novo* review of the facts and law pertaining to the Respondent's Motion to Dismiss, Nunez's Response in Opposition and also the Magistrate Judge's Report and Nunez's objections thereto, hereby finds that the Petition was untimely filed, equitable tolling is not warranted and Respondent's motion to dismiss should be **GRANTED**. Further, the Court also finds that Bradley J. Robert, as the current warden of Centralia Correctional Center, should be **SUBSTITUTED** for Edwin R. Bowen as Respondent. Accordingly, the October 24, 2005, Report and Recommendation issued by Magistrate Judge Wilkerson is **AFFIRMED**. As such, this case is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed this 24th day of January, 2006.

/s/         David RHerndon
**United States District Judge**